HINKLE LAW FIRM, LLC
1617 N. Waterfront Pkwy, Suite 400
Wichita, Kansas 67202-4820
(316) 267-2000 / (316) 264-1518, facsimile

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

IN RE:

CALEB JAMES PENCE and
CANDRA KIM PENCE,

                       *Debtors*.

Case No. 25-20302- RDB
Chapter 13

**SIM FUND II, LLC'S MOTION FOR RELIEF FROM
AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR ABANDONMENT OF
REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE
<u>14-DAY STAY UNDER FED. R. BANKR. P. 4001(b)(3)</u>**

**OBJECTION DEADLINE:   APRIL 14, 2025
HEARING ON OBJECTIONS: APRIL 22, 2025 AT 9:30 A.M.**

COMES NOW creditor SIM Fund II, LLC ("SIM"), by and through its attorney Nicholas R. Grillot of Hinkle Law Firm LLC, and moves the Court for an order under 11 U.S.C. § 362(d) granting SIM relief from the automatic stay with regard to its mortgages against the real estate located in Grant County, Oklahoma, for abandonment of that real estate under 11 U.S.C. § 554(b) and for relief from the 14-day stay under Fed. R. Bankr. P. 4001(b)(3).

In support of its motion, SIM respectfully states the following:

1.     Debtors Caleb James Pence and Candra Kim Pence (together the "Pences") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on March 14, 2025 ("Petition Date").

In the United States Bankruptcy Court for the District of Kansas
*In re Caleb James Pence and Candra Kim Pence*
Case No. 25-20302-RDB, Chapter 13
SIM FUND II, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR
ABANDONMENT OF REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE 14-DAY
STAY UNDER FED. R. BANKR. P. 4001(b)(3)
Page | 2

2.      Before filing their bankruptcy petition, the Pences made and executed an Promissory Note in favor of BancCentral, N.A. ("BCNA") dated May 19, 2021, in the original principal amount of $308,000.00 which evidences BCNA Loan No. *6369 ("Note"), which refinances previous notes.  A copy of the Note is attached as Exhibit A.

3.      To secure the Note, the Pences executed, acknowledged, and delivered to BCNA a mortgage dated May 19, 2021, in the amount of $154,000.00 which was recorded May 24, 2021 in the office of the County Clerk's Office of Grant County, Oklahoma at Book 0768 Pg 723 as Instrument No. 2021-000667 ("Mortgage 1").  A copy of Mortgage 1 is attached as Exhibit B.

4.      To further secure the Note, Pences executed, acknowledged, and delivered to BCNA a mortgage dated May 19, 2021, in the amount of 28,000.00 which was recorded May 24, 2021 in the office of the County Clerk's Office of Grant County, Oklahoma at Book 0768 Pg 730 as Instrument No. 2021-000668 ("Mortgage 2").  A copy of Mortgage 2 is attached as Exhibit C.

5.      The real property subject to Mortgage 1 and Mortgage 2 ("Mortgages") and legally described in Exhibit B and Exhibit C is referred to as the "Real Estate".

6.      Finally, the Note was secured by a guaranty executed by 1776 Transportation LLC ("1776") in favor of BCNA on May 19, 2021 ("Guaranty"). A copy of the Guaranty is attached as Exhibit D.

In the United States Bankruptcy Court for the District of Kansas
*In re Caleb James Pence and Candra Kim Pence*
Case No. 25-20302-RDB, Chapter 13
SIM FUND II, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR
ABANDONMENT OF REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE 14-DAY
STAY UNDER FED. R. BANKR. P. 4001(b)(3)
Page | 3

7.      After not receiving any payment from the Pences on the Note since July 28, 2023, BCNA filed suit against the Pences and 1776 in Grant County, Oklahoma on April 1, 2024 ("Foreclosure Suit").  BCNA sought to recover the balance due on the Note and to foreclose the Mortgages against the Real Estate in the Foreclosure Suit.

8.      During the pendency of the Foreclosure Suit, BCNA sold the Note, Mortgages, and the Guaranty to SIM on August 27, 2024.

9.      To effect the transfer of the Note, BCNA executed a Bill of Sale and Assignment of Loans and Loan Documents on August 27, 2024 ("Loan Assignment").  A copy of the Loan Assignment is attached as Exhibit E.

10.     BCNA assigned Mortgage 1 to SIM by executing the Assignment of Real Estate Mortgage dated August 28, 2024, which was recorded September 17, 2024 in the office of the County Clerk's Office of Grant County, Oklahoma at Book 0792 Pg 419 as Instrument No. 2024-001195 ("Mortgage 1 Assignment").  A copy of Mortgage 1 Assignment is attached as Exhibit F.

11.     BCNA assigned Mortgage 2 by executing the Assignment of Real Estate Mortgage dated August 28, 2024, which was recorded September 17, 2024 in the office of the County Clerk's Office of Grant County, Oklahoma at Book 0792 Pg 417 as Instrument No. 2024-001194 ("Mortgage 2 Assignment").  A copy of Mortgage 2 Assignment is attached as Exhibit G.

In the United States Bankruptcy Court for the District of Kansas
*In re Caleb James Pence and Candra Kim Pence*
Case No. 25-20302-RDB, Chapter 13
SIM FUND II, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR
ABANDONMENT OF REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE 14-DAY
STAY UNDER FED. R. BANKR. P. 4001(b)(3)
Page | 4

12. SIM was eventually granted judgment against the Pences and to foreclose on the Real Estate on January 9, 2025 ("Judgment"). A copy of the Judgment is attached as Exhibit H.

13. In connection with the Judgment, SIM scheduled sheriff's sale of the Real Estate for April 16, 2024.

14. As of the date of this filing and since SIM obtained the Note, no payments have been received by SIM from the Pences. More importantly, the debt associated with the Note has been reduced to judgment. As such, the entire balance of the Judgment is due and owing.

15. The balance owed as of March 31, 2025 is $288,359.69. This amount includes interest, costs, taxes, insurance, property preservation expenses, attorney fees and other expenses authorized to be recovered under the Notes, the Mortgages, and the Judgment.

16. The reasonable value of the Real Estate is $106,600.00.

17. To SIM's knowledge, there are no other creditors that have an interest in the Real Estate. However, to the extent any such interest exists, those interests were foreclosed by the entry of the Judgment.

18. Cause exists under 11 U.S.C. § 362(d) to grant SIM relief from the automatic stay for several reasons.

In the United States Bankruptcy Court for the District of Kansas
*In re Caleb James Pence and Candra Kim Pence*
Case No. 25-20302-RDB, Chapter 13
SIM FUND II, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR
ABANDONMENT OF REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE 14-DAY
STAY UNDER FED. R. BANKR. P. 4001(b)(3)
Page | 5

19.     First, SIM's interest in the Real Estate is not adequately protected.  There is no equity cushion in the Real Estate, no payments have been made to BCNA and/or SIM since July 2023, and no payments are proposed to be made to SIM through any Chapter 13 plan because the Pences have not filed a plan yet.

20.     Second, the Real Estate is not necessary for the Pences to reorganize.  The Pences are not residing in the Real Estate and it has been unoccupied for at least a year.  As such, SIM asserts that the Pences could not reasonably claim the Real Estate as exempt on Schedule C to their Petition.  Additionally, on information and believe, the Pences are not receiving any rental income from the Real Estate based on Schedules G and I to their Petition.

21.     Therefore, because SIM's interest in the Real Estate is not being adequately protected and the Real Estate is not necessary to an effective reorganization, SIM is entitled to relief from the automatic stay for cause under 11 U.S.C. § 362(d).  SIM requests the Court grant it relief from the automatic stay so it can realize its *in rem* interest in Real Estate.

22.     SIM also requests the Court order the abandonment of any interest in the Real Estate by the Chapter 13 Trustee.  Under 11 U.S.C. § 554(b) states "…(o)n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

In the United States Bankruptcy Court for the District of Kansas
*In re Caleb James Pence and Candra Kim Pence*
Case No. 25-20302-RDB, Chapter 13
SIM FUND II, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR
ABANDONMENT OF REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE 14-DAY
STAY UNDER FED. R. BANKR. P. 4001(b)(3)
Page | 6

23.     SIM's mortgage and judgment lien against the Real Estate exceeds the reasonable value of that property.  More importantly, outstanding real estate taxes will continue to accrue, which the Pences' bankruptcy estate would have to pay in order for it to realize any value for the benefit of the Pences' bankruptcy estate.  Therefore, the Real Estate is of inconsequential value, burdensome to the Pences' bankruptcy estate, and should be ordered abandoned under Section 554(b).

24.     Finally, SIM requests the Court for relief from the 14-day stay under Fed. R. Bankr. P. 4001(a)(3) for cause.  There is no equity in the Real Estate and it has remained unoccupied since at least SIM's predecessor in interest, BCNA, filed a foreclosure lawsuit in April 2024.  Additionally, SIM had noticed a sheriff's sale of the Real Estate in the Foreclosure Suit which had been set for April 16, 2025.  Should SIM be granted relief without opposition, relieving SIM from the 14-day stay would allow it to move forward with that sale.

25.     Any creditors or parties in interest who object to the Motion must file objections thereto with the Clerk of the U.S. Bankruptcy Court (U.S. Courthouse, Room 161, 500 States Avenue, Kansas City, Kansas 66101) on or before **April 14, 2025**.

26.     In the event there are timely objections filed, a hearing will be held to determine whether the Motion should be approved by the Bankruptcy Court. That hearing will be a non-evidentiary hearing held in the U.S. Bankruptcy Court (U.S. Courthouse, Room 151, 500 States Avenue, Kansas City, Kansas 66101) on **April 22, 2025 at 9:30**

In the United States Bankruptcy Court for the District of Kansas
*In re Caleb James Pence and Candra Kim Pence*
Case No. 25-20302-RDB, Chapter 13
SIM FUND II, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR
ABANDONMENT OF REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE 14-DAY
STAY UNDER FED. R. BANKR. P. 4001(b)(3)
Page | 7

**a.m.** Only parties who file written objections with the Clerk on or before April 14, 2025 may be heard. Corporate parties may file responses and appear at hearings only through attorneys.

24. If no objections are timely filed, the Court may enter an order approving the Motion without further notice or opportunity for an objection.

WHEREFORE, SIM requests the Court for an order terminating the automatic stay under 11 U.S.C. §362(d) and granting it relief to allow SIM to proceed under non-applicable bankruptcy law to enforce its remedies to foreclose upon and obtain possession of all of its collateral, including, but not limited to the Real Estate; that the Court order the Real Estate abandoned by the Pences' bankruptcy estate under 11 U.S.C. § 554(b); that the Court grant SIM relief from the 14-day stay under Fed. R. Bankr. P. 4001(a)(3); that the order be binding and effective despite any conversion of this bankruptcy case under any other title of the Bankruptcy Code; and that the Court enter such other and further relief it deems just and equitable.

RESPECTFULLY SUBMITTED,

HINKLE LAW FIRM LLC

/s/ Nicholas R. Grillot
Nicholas R. Grillot, #22054
1617 N. Waterfront Pkwy, Suite 400
Wichita, Kansas 67206-6639
Phone: (316) 660-6211 / Fax: (316) 660-6523
Email: ngrillot@hinklaw.com
*Attorneys for SIM Fund II, LLC*

In the United States Bankruptcy Court for the District of Kansas
*In re Caleb James Pence and Candra Kim Pence*
Case No. 25-20302-RDB, Chapter 13
SIM FUND II, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR
ABANDONMENT OF REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE 14-DAY
STAY UNDER FED. R. BANKR. P. 4001(b)(3)
Page | 8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 31, 2025, a true and correct copy of the foregoing SIM FUND II, LLC'S MOTION FOR RELIEF FROM AUTOMATIC STAY UNDER 11 U.S.C. § 362(d), FOR ABANDONMENT OF REAL PROPERTY UNDER 11 U.S.C. § 554(b), AND FOR RELIEF FROM THE 14-DAY STAY UNDER FED. R. BANKR. P. 4001(b)(3) was uploaded to the CM/ECF system, which will send a notice of electronic filing to those requesting notice and other interested parties, and a copy was sent by First Class U.S. Mail, postage prepaid and properly addressed, to the following:

Caleb J. Pence
Candra K. Pence
390 SE 110th Ave
Bluff City, Kansas 67018
*Debtors*

/s/ Tammy Hohstadt
Tammy Hohstadt, Certified PLS
Paralegal for Nicholas R. Grillot


EXHIBIT
A



**Banc Central** ®
*National Association*

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| 26369 | CALEB JAMES PENCE | 212211 | 05/19/21 | BJD - 026 |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $308,000.00 | 5 Year Treasury Yield Curve Point plus 4.050% | 5.250% | 05/28/41 | Commercial |

Creditor Use Only

## PROMISSORY NOTE
(Commercial - Single Advance)

**DATE AND PARTIES.** The date of this Promissory Note (Note) is May 19, 2021. The parties and their addresses are:

**LENDER:**
**BANCCENTRAL, NATIONAL ASSOCIATION**
P.O. Box 484
203 W. Main Street
Anthony, KS 67003
Telephone: (620) 842-1000

**BORROWER:**
**CALEB JAMES PENCE**
390 SE 110 AVE
BLUFF CITY, KS 67018

**CANDRA KIM PENCE**
390 SE 110 AVE
BLUFF CITY, KS 67018

**1. DEFINITIONS.** As used in this Note, the terms have the following meanings:

**A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Note. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

**B. Note.** Note refers to this document, and any extensions, renewals, modifications and substitutions of this Note.

**C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Note.

**D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

**E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

**F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

**G. Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. REFINANCING.** This Note will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| August 25, 2017 | # 23515 | $126,000.00 |
| June 7, 2018 | # 24285 | $214,718.03 |

The remaining balance of all notes listed in the table above is $196,894.69.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, the principal sum of $308,000.00 (Principal) plus interest from May 19, 2021 on the unpaid Principal balance until this Note matures or this obligation is accelerated.

**4. INTEREST.** Interest will accrue on the unpaid Principal balance of this Note at the rate of **5.250 percent (Interest Rate)** until May 28, 2026, after which time it may change as described in the Variable Rate subsection.

**A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Note at the Interest Rate in effect from time to time, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Note will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Accrual.** Interest accrues using an Actual/360 days counting method.

**D. Variable Rate.** The Interest Rate may change during the term of this transaction.

(1) Index. Beginning with the first Change Date, the Interest Rate will be based on the following index: Five Year Treasury Yield Curve Point. For the purpose of this Note, the Five Year Treasury Yield Curve Point shall mean that fluctuating rate of interest adopted by the Bank, from time to time (whether or not charged or published), as its Five-Year Treasury Yield Curve Point. The Bank may, from time to time, extend credit to anyone at rates of interest varying from and having no relationship to, the Five-Year Treasury Yield Curve Point (the "Benchmark").

The Benchmark is the most recent index value available on each Change Date. You do not guaranty by selecting this Benchmark, or the Margin, that the Interest Rate on this Note will be the same rate you charge on any other loans or class of loans you make to me or other borrowers. If this Index is no longer available, I agree and consent to you selecting a substitute Benchmark and an alternative Margin - all at your sole discretion. You will give me advance notice of your selection. As used in this subsection, "no longer available" includes, but is not limited to, when a Benchmark is terminated, becomes deregulated, or becomes unacceptable for use by a regulator.

If the Benchmark is deemed to be no longer available it will be replaced if any of the following events (each, a "Replacement Event") occur: (i) the administrator, including any successor administrator of the Benchmark, has stopped providing the Benchmark to the general public; (ii) the administrator or its regulator issues a public statement indicating that the Benchmark is no longer reliable or representative; or (iii) the effective date of an applicable federal or state law, or applicable federal or state regulation that prohibits use of the Benchmark. If a Replacement Event occurs, you will select a new benchmark (the "Replacement Benchmark") and may also select a new margin (the "Replacement Margin"), as follows:

(a) If a replacement benchmark and margin has been selected or recommended by the Federal Reserve Board, the Federal Reserve Bank of New York, or a committee endorsed or convened by the Federal Reserve Board or the Federal Reserve Bank of New York at the time of a Replacement Event, you shall select that benchmark and margin as the Replacement Benchmark and Replacement Margin.

(b) If (a) is not available at the time of a Replacement Event, you will make a reasonable, good faith effort to select a Replacement Benchmark and a Replacement Margin that, when added together, you reasonably expects will minimize any change in the cost of the loan, taking into account the historical performance of the Benchmark and the Replacement Benchmark.

The Replacement Benchmark and Replacement Margin, if any, will be operative immediately upon a Replacement Event and will be used to determine the interest rate and payments on Change Dates that are more than 0 days after a Replacement Event. The Benchmark and Margin could be replaced more than once during the term of the Note. After a Replacement Event, all references to the "Benchmark" and "Margin" shall be deemed to be references to


Scanned
Indexed
Committed
IMAGED 5-20-21
B# 005 743

001

Case 25-20302   Doc# 15-1   Filed 03/31/25   Page 1 of 3

the "Replacement Benchmark" and "Replacement Margin." You will also give me notice of the Replacement Benchmark and Replacement Margin, if any, and such other information required by applicable law and regulation.

(2) Change Date. Each date on which the Interest Rate may change is called a Change Date. The Interest Rate may change May 28, 2026 and every 60 months thereafter.

(3) Calculation Of Change. On each Change Date you will calculate the Interest Rate, which will be the Benchmark plus 4.050 percent (the "Margin"). Subject to any limitations, this will be the Interest Rate until the next Change Date. The new Interest Rate will become effective on each Change Date. The Interest Rate and other charges on this Note will never exceed the highest rate or charge allowed by law for this Note.

(4) Limitations. The Interest Rate changes are subject to the following limitations:

(a) Lifetime. The Interest Rate will never be greater than 45.000 percent or less than 5.250 percent.

(5) Effect Of Variable Rate. A change in the Interest Rate will have the following effect on the payments: The amount of scheduled payments will change.

**5. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

**A. Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Note before the scheduled maturity date.

**Mortgage/Registry Tax.** A(n) Mortgage/Registry Tax fee of $10.00 payable from separate funds on or before today's date.
**Mortgage Tax Certification.** A(n) Mortgage Tax Certification fee of $182.00 payable from separate funds on or before today's date.
**Recording - Releases.** A(n) Recording - Releases fee of $36.00 payable from separate funds on or before today's date.
**Recording - Mortgage.** A(n) Recording - Mortgage fee of $62.00 payable from separate funds on or before today's date.
**Flood Certification.** A(n) Flood Certification fee of $28.00 payable from separate funds on or before today's date.
**Document Preparation.** A(n) Document Preparation fee of $400.00 payable from separate funds on or before today's date.
**Abstract or Title Search.** A(n) Abstract or Title Search fee of $195.00 payable from separate funds on or before today's date.

**6. GOVERNING AGREEMENT.** This Note is further governed by the Commercial Loan Agreement executed between you and me as a part of this Loan, as modified, amended or supplemented. The Commercial Loan Agreement states the terms and conditions of this Note, including the terms and conditions under which the maturity of this Note may be accelerated. When I sign this Note, I represent to you that I have reviewed and am in compliance with the terms contained in the Commercial Loan Agreement.

**7. PAYMENT.** I agree to pay this Note on demand, but if no demand is made, I agree to pay this Note in **240** payments. A payment of **$2,091.56** will be due June 28, 2021, and on the 28th day of each month thereafter. I will make 60 scheduled payments of this amount. The scheduled payment amount may then change every 60 payments thereafter. Changes in the Interest Rate will not affect the scheduled payment amount during these periods. With each scheduled payment change the payment amount will be adjusted to reflect changes in the Interest Rate during the remaining term of this Note. In addition, changes to the scheduled payment amounts are subject to changes in the Interest Rate as described in the Variable Rate subsection of this Note. A final payment of the entire unpaid balance of Principal and interest will be due May 28, 2041.

Payments will be rounded down to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Note will be applied first to interest that is due, then to principal that is due, then to escrow that is due, and finally to late charges that are due. If you and I agree to a different application of payments, we will describe our agreement on this Note. You may change how payments are applied in your sole discretion without notice to me. The actual amount of my final payment will depend on my payment record.

**8. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**9. LOAN PURPOSE.** The purpose of this Loan is TO REFINANCE PROPERTIES FOR INVESTMENT OPPORTUNITY.

**10. ADDITIONAL TERMS.** DEFAULT INTEREST: If any payment is past due for more than ten (10) days (including the final payment due on the maturity date), interest shall, on the following day, accrue hereunder on the unpaid principal balance at a rate 5.00% in excess of the non-default Interest Rate (the "Default Rate"), and the Default Rate shall continue in effect until all past due payments are paid in full.

DOCUMENT EFFECTIVE DATE: Notwithstanding the date upon which this document is signed by the undersigned, the effective date of this document shall be the date printed on the first page hereof; provided, however, that interest will not begin to accrue on the unpaid principal balance hereof until the date that funds are actually advanced by lender.

This note evidences the renewal and extension of the unpaid indebtedness previously evidenced by Note No.23515 and 24285. All terms of repayment thereof are governed solely by the terms hereof. This note is not accepted in satisfaction or payment of Note No.23515 and 24285, but is made to evidence the new maturity date and repayment terms for the unpaid indebtedness thereunder.

**11. SECURITY.** The Loan is secured by separate security instruments prepared together with this Note as follows:

| Document Name | Parties to Document | Date of Security Document |
|---|---|---|
| Mortgage - 815 5TH ST, MANCHESTER, OK 73758 | CALEB JAMES PENCE , CANDRA KIM PENCE | MAY 19, 2021 |
| Mortgage - 846 5TH ST, MANCHESTER, OK 73758 | CALEB JAMES PENCE , CANDRA KIM PENCE | MAY 19, 2021 |

and by the following, previously executed, security instruments or agreements: REM DATED:8/25/17 FILED:10/23/17 IN BOOK:0741 ON PAGE:4 IN GRANT COUNTY, OK.

**12. GUARANTY.** A Guaranty, dated May 19, 2021, from 1776 TRANSPORTATION LLC (Guarantor) to you, guaranties the payment and performance of my debts as described in the Guaranty.

**13. DUE ON SALE.** You may, at your option, declare the entire balance of this Note to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**14. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

**A. Additional Waivers By Borrower.** In addition, I, and any party to this Note and Loan, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Note.

(1) You may renew or extend payments on this Note, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Note.

(4) You, or any institution participating in this Note, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Note to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Note as a Borrower is authorized to modify the terms of this Note or any instrument securing, guarantying or relating to this Note.

(7) I agree that you may inform any party who guarantees this Loan of any Loan accommodations, renewals, extensions, modifications, substitutions or future advances.

**B. No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Note, or any other Loan Document, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

**15. COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

CALEB JAMES PENCE
Oklahoma **Promissory Note**
OK/4XKWEDMAN00000000002448043N

Wolters Kluwer Financial Services ©1996, 2021 Bankers Systems™

Page 2

002

Case 25-20302   Doc# 15-1   Filed 03/31/25   Page 2 of 3

**16. APPLICABLE LAW.** This Note is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**17. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Note shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my successors and assigns.

**18. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Note may not be amended or modified by oral agreement. No amendment or modification of this Note is effective unless made in writing. This Note and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Note is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**19. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Note.

**20. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

**21. CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably request. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

**22. ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**23. WAIVER OF JURY TRIAL.** All of the parties to this Note knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Note or any other Loan Document or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

**24. SIGNATURES.** By signing, I agree to the terms contained in this Note. I also acknowledge receipt of a copy of this Note.

BORROWER:

_____    Date 19 May 2021
CALEB JAMES PENCE

_____    Date 5/19/21
CANDRA KIM PENCE

003

EXHIBIT
B

R.E. MTG TAX $ 154.00 DATED 5-21-21
CERT. FEES $ 5.00 REB # 160
Penny Huff PENNY HUFF, CO. TREAS.
_____ DEPUTY

26369

I-2021-000667  Book 0768 Pg 723
05/24/2021  11:42am  Pg 0723-0729
Fee: $30.00      Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

Space Above This Line For Recording Data

When recorded return to Loan Department, BancCentral National Association, PO Box 667, Alva, OK 73717-0667

## MORTGAGE
### (With Future Advance Clause)

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is MAY 19, 2021. The parties and their addresses are:

MORTGAGOR:
    CALEB JAMES PENCE
    Spouse of CANDRA KIM PENCE
    390 SE 110 AVE
    BLUFF CITY, KS 67018

    CANDRA KIM PENCE
    Spouse of CALEB JAMES PENCE
    390 SE 110 AVE
    BLUFF CITY, KS 67018

    This Property is vested in the names Caleb and Candra Pence

LENDER:
    BANCCENTRAL, NATIONAL ASSOCIATION
    Organized and existing under the laws of the United States of America
    P.O. Box 484
    203 W. Main Street
    Anthony, KS  67003

1. **DEFINITIONS.** For the purposes of this document, the following term has the following meaning.

    **A. Loan.** "Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor does hereby grant, bargain, convey, sell and mortgage to Lender, with the power of sale, the following described property:

LOT 5 BLOCK 2 SOUTH ADDITION MANCHESTER, OKLAHOMA (50'X140') (WITH ALL IMPROVEMENTS AND MINERALS). SOUTH 25 FEET OF LOT 4 BLOCK 2 SOUTH ADDITION MANCHESTER OKLAHOMA. (25'X140') (WITH ALL IMPROVEMENTS AND MINERALS)
AND
LOTS 6,7,&8 IN BLOCK 2 SOUTH ADDITION MANCHESTER, GRANT CO. STATE OF OKLAHOMA. TOGETHER WITH AMERICAN EAGLE DOUBLE WIDE TRAILER: 6026-3RFBF2, VIN# GF08-0244, IS DECLARED BY COURT TO BE PERMANENTLY PART OF THE PROPERTY. WITH ALL IMPROVEMENTS AND ALL MINERAL RIGHTS.

The property is located in Grant County at 815 5TH ST, MANCHESTER, Oklahoma 73758.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber including timber to be cut now or at any time in the future, all diversion payments or third party payments made to crop producers, all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however



RECEIVED  MAY 24 2021

001

I-2021-000667    Book 0768 Pg 724
05/24/2021  11:42am  Pg 0723-0729
Fee: $30.00    Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

established. This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

3. MAXIMUM OBLIGATION LIMIT. The total principal amount secured by this Security Instrument at any one time and from time to time will not exceed $154,000.00. Any limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. SECURED DEBTS AND FUTURE ADVANCES. The term "Secured Debts" includes and this Security Instrument will secure each of the following:

A. Specific Debts. The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 26369, dated May 19, 2021, from Mortgagor to Lender, with a loan amount of $308,000.00.

B. Future Advances. All future advances from Lender to Mortgagor under the Specific Debts executed by Mortgagor in favor of Lender after this Security Instrument. If more than one person signs this Security Instrument, each agrees that this Security Instrument will secure all future advances that are given to Mortgagor either individually or with others who may not sign this Security Instrument. All future advances are secured by this Security Instrument even though all or part may not yet be advanced. All future advances are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All Debts. All present and future debts from Mortgagor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

D. Sums Advanced. All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

5. PAYMENTS. Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

6. WARRANTY OF TITLE. Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. PRIOR SECURITY INTERESTS. With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. CLAIMS AGAINST TITLE. Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. DUE ON SALE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

10. WARRANTIES AND REPRESENTATIONS. Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

11. PROPERTY CONDITION, ALTERATIONS, INSPECTION, VALUATION AND APPRAISAL. Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security

CALEB JAMES PENCE
Oklahoma Mortgage
OK/4XXKWEDMAN00000000002448043N                    Wolters Kluwer Financial Services ©1996, 2021 Bankers Systems™                    Page 2

Case 25-20302    Doc# 15-2    Filed 03/31/25    Page 2 of 7

I-2021-000667    Book 0768 Pg 725
05/24/2021  11:42am  Pg 0723-0729
Fee: $30.00       Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time and frequency for the purpose of inspecting, valuating, or appraising the Property. Lender will give Mortgagor notice at the time of or before an on-site inspection, valuation, or appraisal for on-going due diligence or otherwise specifying a reasonable purpose. Any inspection, valuation or appraisal of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection, valuation or appraisal for its own purpose, except as otherwise provided by law.

**12. AUTHORITY TO PERFORM.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**13. ASSIGNMENT OF LEASES AND RENTS.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor will endorse and deliver any payments of Rents from the Property to Lender. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the Mortgagor's default when Lender takes the affirmative action required by the law where the Property is located. Amounts collected will be applied at Lender's discretion to the Secured Debts, the cost of managing, protecting and preserving the Property, and other necessary expenses. This Security Instrument does not apply when it secures an extension of credit related to a consumer loan or made primarily for an agricultural purpose where Mortgagor is either a natural person or a farm or ranching business corporation. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases. This section does not secure any extension of credit made primarily for personal, family or household purposes.

**14. DEFAULT.** Mortgagor will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

A. Payments. Mortgagor fails to make a payment in full when due.

B. Insolvency or Bankruptcy. The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by

003

or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

C. Death or Incompetency. Mortgagor dies or is declared legally incompetent.

D. Failure to Perform. Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

E. Other Documents. A default occurs under the terms of any other document relating to the Secured Debts.

F. Other Agreements. Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

G. Misrepresentation. Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

K. Property Transfer. Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

L. Property Value. Lender determines in good faith that the value of the Property has declined or is impaired.

M. Insecurity. Lender determines in good faith that a material adverse change has occurred in Mortgagor's financial condition from the conditions set forth in Mortgagor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

15. REMEDIES. On or after the occurrence of an Event of Default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of an Event of Default or anytime thereafter.

Lender has the power to sell the Property. If Lender invokes the power of sale, Lender will give notice in the manner required by applicable law to Mortgagor and any other persons prescribed by law. Lender will also publish the notice of sale, and the Property will be sold, as prescribed by applicable law. Upon any sale of the Property, Lender will make and deliver a deed without warranty or appropriate deed required by applicable law that conveys all right, title and interest to the Property that was sold to the purchaser(s).

All remedies are distinct, cumulative and not exclusive, and Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after the occurrence of an Event of Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement, valuation, appraisal or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect, valuate, appraise and preserve the Property. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

I-2021-000667    Book 0768 Pg 727
05/24/2021 11:42am  Pg 0723-0729
Fee: $30.00    Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

18. CONDEMNATION. Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. INSURANCE. Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals shall include a standard "mortgage clause" (or "lender loss payable clause") endorsement that names Lender as "mortgagee" and "loss payee". If required by Lender, all insurance policies and renewals will also include an "additional insured" endorsement that names Lender as an "additional insured". If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and

CALEB JAMES PENCE
Oklahoma Mortgage
OK/4XKWEDMAN00000000002448043N                    Wolters Kluwer Financial Services ' 1996, 2021 Bankers Systems™                    Page 5

005

I-2021-000667   Book 0768 Pg 728
05/24/2021  11:42am  Pg 0723-0729
Fee: $30.00      Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

**20. ESCROW FOR TAXES AND INSURANCE.** Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. WAIVER OF APPRAISEMENT.** Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

**22. USE OF PROPERTY.** Mortgagor shall not use or occupy the Property in any manner that would constitute a violation of any state and/or federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. In the event that Mortgagor becomes aware of such a violation, Mortgagor shall take all actions allowed by law to terminate the violating activity.

In addition to all other indemnifications, obligations, rights and remedies contained herein, if the Lender and/or its respective directors, officers, employees, agents and attorneys (each an "Indemnitee") is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Security Instrument or the related property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use of such property, then the Mortgagor shall (to the extent permitted by applicable law) indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. To the extent permitted by applicable law, the within indemnification shall survive payment of the Secured Debt, and/or any termination, release or discharge executed by the Lender in favor of the Mortgagor.

Violation of this provision is a material breach of this Security Instrument and thereby constitutes a default under the terms and provisions of this Security Instrument.

**23. OTHER TERMS.** The following are applicable to this Security Instrument:

    **A. No Action by Lender.** Nothing contained in this Security Instrument shall require Lender to take any action.

    **B. Additional Terms.** DOCUMENT EFFECTIVE DATE: Notwithstanding the date upon which this document is signed by the undersigned, the effective date of this document shall be the date printed on the first page hereof; provided, however, that interest will not begin to accrue on the unpaid principal balance hereof until the date that funds are actually advanced by lender.

**24. APPLICABLE LAW.** This Security Instrument is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

**25. JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor severally or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

**26. AMENDMENT, INTEGRATION AND SEVERABILITY.** This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**27. INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

I-2021-000687  Book 0768 Pg 729
05/24/2021  11:42am  Pg 0723-0729
Fee: $30.00  Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

**28. NOTICE, ADDITIONAL DOCUMENTS AND RECORDING FEES.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any other, correct and complete information Lender requests to effectively mortgage or convey the Property. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

**29. WAIVER OF JURY TRIAL.** All of the parties to this Security Instrument knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Security Instrument or any other documents relating to the Secured Debts or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

NOTICE TO MORTGAGOR: A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE.

**SIGNATURES.** By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

MORTGAGOR:

_Caleb_ _____  Date _19 May, 2021_
CALEB JAMES PENCE

_Candra Pence_ _____  Date _5/19/21_
CANDRA KIM PENCE

ACKNOWLEDGMENT.
_County_ OF _Harper_, _State_ OF _Kansas_ ss.
This instrument was acknowledged before me this _19_ day of _May_, _2021_ by CALEB JAMES PENCE, spouse of CANDRA KIM PENCE, and CANDRA KIM PENCE, spouse of CALEB JAMES PENCE.

My commission expires: _1-24-22_     _Kristina R. Wedma_
Commission number: _1095291_     (Notary Public)

KRISTINA L. WEDMAN
Notary Public - State of Kansas
My Appt. Expires _1-24-22_

Case 25-20302     Doc# 15-2     Filed 03/31/25     Page 7 of 7



EXHIBIT

C



R.E. MTG TAX $ ~~28.00~~ DATED ~~5-24-21~~
CERT. FEES $ ~~5.00~~ REG# ~~1603~~
_Penny Huff_ PENNY HUFF, CO. TREAS.
_____ DEPUTY

# 26369

I-2021-000668    Book 0768 Pg 730
05/24/2021 11:42am Pg 0730-0737
Fee: $32.00    Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

---

Space Above This Line For Recording Data

When recorded return to Loan Department, BancCentral National Association, PO Box 667, Alva, OK 73717-0667

## MORTGAGE
### (With Future Advance Clause)

---

**DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is MAY 19, 2021. The parties and their addresses are:

**MORTGAGOR:**
CALEB JAMES PENCE
Spouse of CANDRA KIM PENCE
390 SE 110 AVE
BLUFF CITY, KS 67018

CANDRA KIM PENCE
Spouse of CALEB JAMES PENCE
390 SE 110 AVE
BLUFF CITY, KS 67018

This property is vested in the name of Caleb Pence and Candra Pence.

**LENDER:**
BANCCENTRAL, NATIONAL ASSOCIATION
Organized and existing under the laws of the United States of America
P.O. Box 484
203 W. Main Street
Anthony, KS 67003

1. **DEFINITIONS.** For the purposes of this document, the following term has the following meaning.

A. **Loan.** "Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debts and Mortgagor's performance under this Security Instrument, Mortgagor does hereby grant, bargain, convey, sell and mortgage to Lender, with the power of sale, the following described property:

THE EAST TWENTY FEET (E.20') OF THE SOUTH THIRTY-FIVE FEET (S.35') OF LOTS TWO (2) AND THE EAST TWENTY FEET (E.20') OF LOT THREE (3) AND ALL OF LOTS FOUR (4), FIVE (5) AND SIX (6), IN BLOCK ONE (1), SOUTH ADDITION TO THE TOWN OF MANCHESTER, GRANT COUNTY, OKLAHOMA,

TRACT 2:
A TRACT OF LAND BEING A PART OF THE WEST-HALF OF THE SOUTHWEST QUARTER OF SECTION FOURTEEN (14), TOWNSHIP TWENTY-NINE NORTH, (29N), RANGE EIGHT (8), W.I.M., GRANT COUNTY, OKLAHOMA, BOUNDED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF THE TRACT OF LAND, HERETOFORE PLATTED AS THE SOUTH ADDITION TO THE TOWN OF MANCHESTER, OKLAHOMA; THENCE SOUTH ALONG THE EAST LINE OF SAID ADDITION 1400 FEET TO THE SOUTHEAST CORNER THEREOF; THENCE EAST 228 FEET TO THE DIVIDING LINE BETWEEN THE EAST-HALF AND THE WEST-HALF OF SAID QUARTER SECTION; THENCE NORTH ALONG SAID DIVIDING LINE TO THE NORTH LINE OF SAID QUARTER SECTION; THENCE WEST ALONG NORTH LINE OF SAID QUARTER SECTION 216 FEET TO THE PLACE OF BEGINNING, LESS AND EXCEPT THE RIGHT OF WAY OF THE SANTA FE RAILWAY ACROSS SAID LAND, LESS AND EXCEPT THE NORTH 150 FEET AND THE SOUTH 1100 FEET OF SAID TRACT OF LAND AS

CALEB JAMES PENCE
Oklahoma Mortgage
OK/4XKWEDMAN00000000002448043N                    Wolters Kluwer Financial Services 1996, 2021 Bankers Systems™                    Page 1



RECEIVED MAY 24 2021

I-2021-000668   Book 0768 Pg 731
05/24/2021  11:42am  Pg 0730-0737
Fee: $32.00      Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

DETERMINED BY THE WEST LINE OF SAID TRACT OF LAND.

TRACT 3:

THE NORTH 150' OF A TRACT OF LAND, BEING A PART OF THE W/2 OF THE SW/4 OF SECTION FOURTEEN (14), TOWNSHIP TWENTY-NINE NORTH (29N), RANGE EIGHT (8), W.I.M., GRANT, COUNTY, OKLAHOMA, BOUNDED AS FOLLOWS: BEGINNING AT THE NORTHEST CORNER OF THE TRACT OF LAND HERTOFORE PLATTED AS THE SOUTH ADDITION TO THE TOWN OF MANCHESTER, OKLAHOMA, THENCE SOUTH ALONG THE EAST LINE OF SAID ADDITION 1400 FEET TO THE SOUTHEAST CORNER THEREOF, THENCE EAST 228 FEET TO THE DIVIDING LINE BETWEEN THE EAST-HALF AND THE WEST-HALF OF SAID QUARTER SECTION, THENCE NORTH ALONG SAID DIVIDING LINE TO THE NORTH LINE OF SAID QUARTER SECTION, THENCE WEST ALONG THE NORTH LINE OF SAID QUARTER SECTION 216 FEET TO THE PLACE OF BEGINNING, LESS AND EXCEPT THE RIGHT OF WAY OF THE SANTA FE RAILWAY ACROSS SAID LAND.

TRACT 4:

A TRACT OF PARCEL OF LAND LYING IN THE SOUTHWEST QUARTER (SW/4) OF SECTION FOURTEEN (14), TOWNSHIP TWENTY-NINE (29N), RANGE EIGHT (8), W.I.M., GRANT COUNTY, OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: A PARCEL OF LAND 100 FEET WIDE THROUGH THE SAID SW/4 OF S14-T29N-R8W, SAID PARCEL BEING FIFTY FEET (50') ON EITHER SIDE OF THE FORMER RIGHT OF WAY OF THE GULF RAILROAD COMPANY, OVER AND ACROSS THE AFORMENTIONED SW/4, WITH SAID PARCEL CONTAINING 5.97 ACRES, MORE OR LESS.

The property is located in Grant County at 846 5TH ST, MANCHESTER, Oklahoma 73758.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber including timber to be cut now or at any time in the future, all diversion payments or third party payments made to crop producers, all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described (all referred to as Property). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established. This Security Instrument will remain in effect until the Secured Debts and all underlying agreements have been terminated in writing by Lender.

**3. MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time and from time to time will not exceed $28,000.00. Any limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**4. SECURED DEBTS AND FUTURE ADVANCES.** The term "Secured Debts" includes and this Security Instrument will secure each of the following:

A. Specific Debts. The following debts and all extensions, renewals, refinancings, modifications and replacements. A promissory note or other agreement, No. 26369, dated May 19, 2021, from Mortgagor to Lender, with a loan amount of $308,000.00.

B. Future Advances. All future advances from Lender to Mortgagor under the Specific Debts executed by Mortgagor in favor of Lender after this Security Instrument. If more than one person signs this Security Instrument, each agrees that this Security Instrument will secure all future advances that are given to Mortgagor either individually or with others who may not sign this Security Instrument. All future advances are secured by this Security Instrument even though all or part may not yet be advanced. All future advances are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future advances in any amount. Any such commitment must be agreed to in a separate writing.

C. All Debts. All present and future debts from Mortgagor to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Instrument, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Instrument. Nothing in this Security Instrument constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

D. Sums Advanced. All sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**5. PAYMENTS.** Mortgagor agrees that all payments under the Secured Debts will be paid when due and in accordance with the terms of the Secured Debts and this Security Instrument.

**6. WARRANTY OF TITLE.** Mortgagor covenants that Mortgagor is lawfully seized of the estate conveyed by this Mortgage and has the right to grant, bargain, convey, sell, and mortgage, with the power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

**7. PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

A. To make all payments when due and to perform or comply with all covenants.

I-2021-000668   Book 0768 Pg 732
05/24/2021  11:42am  Pg 0730-0737
Fee: $32.00      Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

B. To promptly deliver to Lender any notices that Mortgagor receives from the holder.

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. CLAIMS AGAINST TITLE. Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

9. DUE ON SALE OR ENCUMBRANCE. Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

10. WARRANTIES AND REPRESENTATIONS. Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

11. PROPERTY CONDITION, ALTERATIONS, INSPECTION, VALUATION AND APPRAISAL. Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor will not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims, and actions against Mortgagor, and of any loss or damage to the Property.

No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Mortgagor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Mortgagor will not partition or subdivide the Property without Lender's prior written consent.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time and frequency for the purpose of inspecting, valuating, or appraising the Property. Lender will give Mortgagor notice at the time of or before an on-site inspection, valuation, or appraisal for on-going due diligence or otherwise specifying a reasonable purpose. Any inspection, valuation or appraisal of the Property will be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection, valuation or appraisal for its own purpose, except as otherwise provided by law.

12. AUTHORITY TO PERFORM. If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor will not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

13. ASSIGNMENT OF LEASES AND RENTS. Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (Property).

A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to any extensions, renewals, modifications or replacements (Leases).

B. Rents, issues and profits, including but not limited to security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Mortgagor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default. Mortgagor will not collect in advance any Rents due in future lease periods, unless Mortgagor first obtains Lender's written consent. Upon default, Mortgagor will receive any Rents in trust for Lender and Mortgagor will not commingle the Rents with any other funds. When Lender so directs, Mortgagor

003

will endorse and deliver any payments of Rents from the Property to Lender. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the Mortgagor's default when Lender takes the affirmative action required by the law where the Property is located. Amounts collected will be applied at Lender's discretion to the Secured Debts, the cost of managing, protecting and preserving the Property, and other necessary expenses. This Security Instrument does not apply when it secures an extension of credit related to a consumer loan or made primarily for an agricultural purpose where Mortgagor is either a natural person or a farm or ranching business corporation. As long as this Assignment is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Mortgagor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Mortgagor or any party to the Lease defaults or fails to observe any applicable law, Mortgagor will promptly notify Lender. If Mortgagor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance. Mortgagor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Mortgagor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Mortgagor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases. This section does not secure any extension of credit made primarily for personal, family or household purposes.

14. DEFAULT. Mortgagor will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

A. Payments. Mortgagor fails to make a payment in full when due.

B. Insolvency or Bankruptcy. The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against Mortgagor, Borrower, or any co-signer, endorser, surety or guarantor of this Security Instrument or any other obligations Borrower has with Lender.

C. Death or Incompetency. Mortgagor dies or is declared legally incompetent.

D. Failure to Perform. Mortgagor fails to perform any condition or to keep any promise or covenant of this Security Instrument.

E. Other Documents. A default occurs under the terms of any other document relating to the Secured Debts.

F. Other Agreements. Mortgagor is in default on any other debt or agreement Mortgagor has with Lender.

G. Misrepresentation. Mortgagor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. Mortgagor fails to satisfy or appeal any judgment against Mortgagor.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. Mortgagor changes Mortgagor's name or assumes an additional name without notifying Lender before making such a change.

K. Property Transfer. Mortgagor transfers all or a substantial part of Mortgagor's money or property. This condition of default, as it relates to the transfer of the Property, is subject to the restrictions contained in the DUE ON SALE section.

L. Property Value. Lender determines in good faith that the value of the Property has declined or is impaired.

M. Insecurity. Lender determines in good faith that a material adverse change has occurred in Mortgagor's financial condition from the conditions set forth in Mortgagor's most recent financial statement before the date of this Security Instrument or that the prospect for payment or performance of the Secured Debts is impaired for any reason.

15. REMEDIES. On or after the occurrence of an Event of Default, Lender may use any and all remedies Lender has under state or federal law or in any document relating to the Secured Debts, including without limitation, the power to sell the Property. Any amounts advanced on Mortgagor's behalf will be immediately due and may be added to the balance owing under the Secured Debts. Lender may make a claim for any and all insurance benefits or refunds that may be available on Mortgagor's default.

Subject to any right to cure, required time schedules or any other notice rights Mortgagor may have under federal and state law, Lender may make all or any part of the amount owing by the terms of the Secured Debts immediately due and foreclose this Security Instrument in a manner provided by law upon the occurrence of an Event of Default or anytime thereafter.

Lender has the power to sell the Property. If Lender invokes the power of sale, Lender will give notice in the manner required by applicable law to Mortgagor and any other persons prescribed by law. Lender will also

I-2021-000668   Book 0768 Pg 734
05/24/2021  11:42am  Pg 0730-0737
Fee: $32.00     Doc: $0.00
Cindy Pratt · Grant County Clerk
State of OK

publish the notice of sale, and the Property will be sold, as prescribed by applicable law. Upon any sale of the Property, Lender will make and deliver a deed without warranty or appropriate deed required by applicable law that conveys all right, title and interest to the Property that was sold to the purchaser(s).

All remedies are distinct, cumulative and not exclusive, and Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debts after the balance is due or is accelerated or after foreclosure proceedings are filed will not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

16. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after the occurrence of an Event of Default, to the extent permitted by law, Mortgagor agrees to pay all expenses of collection, enforcement, valuation, appraisal or protection of Lender's rights and remedies under this Security Instrument or any other document relating to the Secured Debts. Mortgagor agrees to pay expenses for Lender to inspect, valuate, appraise and preserve the Property. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of the Secured Debts. In addition, to the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees incurred by Lender to protect Lender's rights and interests in connection with any bankruptcy proceedings initiated by or against Mortgagor.

17. ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES. As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substance," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Mortgagor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Mortgagor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Mortgagor or any tenant of any Environmental Law. Mortgagor will immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are and will remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Mortgagor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Mortgagor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Mortgagor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Mortgagor agrees, at Mortgagor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Mortgagor's obligations under this section at Mortgagor's expense.

CALEB JAMES PENCE
Oklahoma Mortgage
OK/4XXWEDMAN00000000002448043N          Wolters Kluwer Financial Services ©1996, 2021 Bankers Systems™          Page 6

005

I-2021-000868   Book 0768 Pg 735
05/24/2021  11:42am  Pg 0730-0737
Fee: $32.00      Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Mortgagor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Mortgagor will provide Lender with collateral of at least equal value to the Property without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section will survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

18. CONDEMNATION. Mortgagor will give Lender prompt notice of any pending or threatened action by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds will be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

19. INSURANCE. Mortgagor agrees to keep the Property insured against the risks reasonably associated with the Property. Mortgagor will maintain this insurance in the amounts Lender requires. This insurance will last until the Property is released from this Security Instrument. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debts. Mortgagor may choose the insurance company, subject to Lender's approval, which will not be unreasonably withheld.

All insurance policies and renewals shall include a standard "mortgage clause" (or "lender loss payable clause") endorsement that names Lender as "mortgagee" and "loss payee". If required by Lender, all insurance policies and renewals will also include an "additional insured" endorsement that names Lender as an "additional insured". If required by Lender, Mortgagor agrees to maintain comprehensive general liability insurance and rental loss or business interruption insurance in amounts and under policies acceptable to Lender. The comprehensive general liability insurance must name Lender as an additional insured. The rental loss or business interruption insurance must be in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing).

Mortgagor will give Lender and the insurance company immediate notice of any loss. All insurance proceeds will be applied to restoration or repair of the Property or to the Secured Debts, at Lender's option. If Lender acquires the Property in damaged condition, Mortgagor's rights to any insurance policies and proceeds will pass to Lender to the extent of the Secured Debts.

Mortgagor will immediately notify Lender of cancellation or termination of insurance. If Mortgagor fails to keep the Property insured, Lender may obtain insurance to protect Lender's interest in the Property and Mortgagor will pay for the insurance on Lender's demand. Lender may demand that Mortgagor pay for the insurance all at once, or Lender may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of Mortgagor, may be written by a company other than one Mortgagor would choose, and may be written at a higher rate than Mortgagor could obtain if Mortgagor purchased the insurance. Mortgagor acknowledges and agrees that Lender or one of Lender's affiliates may receive commissions on the purchase of this insurance.

20. ESCROW FOR TAXES AND INSURANCE. Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. WAIVER OF APPRAISEMENT. Appraisement of the Property is waived or not waived at Lender's option, which shall be exercised before or at the time judgment is entered in any foreclosure.

22. USE OF PROPERTY. Mortgagor shall not use or occupy the Property in any manner that would constitute a violation of any state and/or federal laws involving controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. In the event that Mortgagor becomes aware of such a violation, Mortgagor shall take all actions allowed by law to terminate the violating activity.

In addition to all other indemnifications, obligations, rights and remedies contained herein, if the Lender and/or its respective directors, officers, employees, agents and attorneys (each an "Indemnitee") is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Security Instrument or the related property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use of such property, then the Mortgagor shall (to the extent permitted by applicable law) indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. To the extent permitted by applicable law, the within indemnification shall survive payment of the Secured Debt, and/or any termination, release or discharge executed by the Lender in favor of the Mortgagor.

Violation of this provision is a material breach of this Security Instrument and thereby constitutes a default under the terms and provisions of this Security Instrument.

I-2021-000666  Book 0768 Pg 736
05/24/2021  11:42am  Pg 0730-0737
Fee: $32.00     Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

23. OTHER TERMS. The following are applicable to this Security Instrument:

A. No Action by Lender. Nothing contained in this Security Instrument shall require Lender to take any action.

B. Additional Terms. DOCUMENT EFFECTIVE DATE: Notwithstanding the date upon which this document is signed by the undersigned, the effective date of this document shall be the date printed on the first page hereof; provided, however, that interest will not begin to accrue on the unpaid principal balance hereof until the date that funds are actually advanced by lender.

24. APPLICABLE LAW. This Security Instrument is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

25. JOINT AND SEVERAL LIABILITY AND SUCCESSORS. Each Mortgagor's obligations under this Security Instrument are independent of the obligations of any other Mortgagor. Lender may sue each Mortgagor severally or together with any other Mortgagor. Lender may release any part of the Property and Mortgagor will still be obligated under this Security Instrument for the remaining Property. Mortgagor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Mortgagor's consent. Such a change will not release Mortgagor from the terms of this Security Instrument. The duties and benefits of this Security Instrument will bind and benefit the successors and assigns of Lender and Mortgagor.

26. AMENDMENT, INTEGRATION AND SEVERABILITY. This Security Instrument may not be amended or modified by oral agreement. No amendment or modification of this Security Instrument is effective unless made in writing. This Security Instrument and any other documents relating to the Secured Debts are the complete and final expression of the agreement. If any provision of this Security Instrument is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

27. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Security Instrument.

28. NOTICE, ADDITIONAL DOCUMENTS AND RECORDING FEES. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Mortgagor will be deemed to be notice to all Mortgagors. Mortgagor will inform Lender in writing of any change in Mortgagor's name, address or other application information. Mortgagor will provide Lender any other, correct and complete information Lender requests to effectively mortgage or convey the Property. Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording of this Security Instrument. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and to confirm Lender's lien status on any Property, and Mortgagor agrees to pay all expenses, charges and taxes in connection with the preparation and recording thereof. Time is of the essence.

29. WAIVER OF JURY TRIAL. All of the parties to this Security Instrument knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Security Instrument or any other documents relating to the Secured Debts or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

NOTICE TO MORTGAGOR: A POWER OF SALE HAS BEEN GRANTED IN THIS MORTGAGE. A POWER OF SALE MAY ALLOW THE MORTGAGEE TO TAKE THE MORTGAGED PROPERTY AND SELL IT WITHOUT GOING TO COURT IN A FORECLOSURE ACTION UPON DEFAULT BY THE MORTGAGOR UNDER THIS MORTGAGE.

SIGNATURES. By signing, Mortgagor agrees to the terms and covenants contained in this Security Instrument. Mortgagor also acknowledges receipt of a copy of this Security Instrument.

MORTGAGOR:

_Caleb_____ Date _19 May 2021_
CALEB JAMES PENCE

_Candra Kim Pence_____ Date _5/19/21_
CANDRA KIM PENCE

CALEB JAMES PENCE
Oklahoma Mortgage
OK/4XKWEDMAN00000000002448043N          Wolters Kluwer Financial Services ©1996, 2021 Bankers Systems™          Page 7

007

I-2021-000668   Book 0768 Pg 737
05/24/2021  11:42am  Pg 0730-0737
Fee: $32.00      Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

ACKNOWLEDGMENT.

County of Harper, State of Kansas ss.

This instrument was acknowledged before me this _19_ day of _May_, _2021_ by CALEB JAMES PENCE , spouse of CANDRA KIM PENCE, and CANDRA KIM PENCE , spouse of CALEB JAMES PENCE.

My commission expires: _1-24-22_

Commission number: _1095291_   _Kristina L. Wedman_ (Notary Public)

KRISTINA L. WEDMAN
Notary Public - State of Kansas
My Appt. Expires  1-24-22

CALEB JAMES PENCE
Oklahoma Mortgage
OK/4XKWEDMAN000000000002448043N          Wolters Kluwer Financial Services ©1996, 2021 Bankers Systems™          Page 8

008



# GUARANTY
(Continuing Debt - Unlimited)

**DATE AND PARTIES.** The date of this Guaranty is May 19, 2021. The parties and their addresses are:

**LENDER:**
BANCCENTRAL, NATIONAL ASSOCIATION
P.O. Box 484
203 W. Main Street
Anthony, KS 67003
Telephone: (620) 842-1000

**BORROWER:**
CALEB JAMES PENCE
390 SE 110 AVE
BLUFF CITY, KS 67018

CANDRA KIM PENCE
390 SE 110 AVE
BLUFF CITY, KS 67018

**GUARANTOR:**
1776 TRANSPORTATION LLC
an Oklahoma Limited Liability Company
846 5TH ST
MANCHESTER, OK 73758

**1. DEFINITIONS.** As used in this Guaranty, the terms have the following meanings:

A. Pronouns. The pronouns "I", "me" and "my" refer to all persons or entities signing this Guaranty, severally and together. "You" and "your" refer to the Lender.

B. Note. "Note" refers to the document that evidences the Borrower's indebtedness, and any extensions, renewals, modifications and substitutions of the Note.

C. Property. "Property" means any property, real, personal or intangible, that secures performance of the obligations of the Note, Debt, or this Guaranty.

D. Loan. "Loan" refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.

E. Loan Documents. "Loan Documents" refer to all the documents executed as a part of or in connection with the Loan.

**2. SPECIFIC AND FUTURE DEBT GUARANTY.** For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and to induce you, at your option, to make loans or engage in any other transactions with the Borrower from time to time, I absolutely and unconditionally agree to all terms of and guaranty to you the payment and performance of each and every Debt, of every type, purpose and description that the Borrower either individually, among all or a portion of themselves, or with others, may now or at any time in the future owe you, including, but not limited to the following described Debt(s) including without limitation, all principal, accrued interest, attorneys' fees and collection costs, when allowed by law, that may become due from the Borrower to you in collecting and enforcing the Debt and all other agreements with respect to the Borrower.

UNLIMITED

In addition, Debt refers to debts, liabilities, and obligations of the Borrower (including, but not limited to, amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, loan, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs and storage, and all extensions, renewals, refinancings and modifications of these debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent, including obligations and duties arising from the terms of all documents prepared or submitted for the transaction such as applications, security agreements, disclosures, and the Note.

You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

**3. EXTENSIONS.** I consent to all renewals, extensions, modifications and substitutions of the Debt which may be made by you upon such terms and conditions as you may see fit from time to time without further notice to me and without limitation as to the number of renewals, extensions, modifications or substitutions.

A. Future Advances. I waive notice of and consent to any and all future advances made to the Borrower by you.

**4. UNCONDITIONAL LIABILITY.** I am unconditionally liable under this Guaranty, regardless of whether or not you pursue any of your remedies against the Borrower, against any other maker, surety, guarantor or endorser of the Debt or against any Property. You may sue me alone, or anyone else who is obligated on this Guaranty, or any number of us together, to collect the Debt. My liability is not conditioned on the signing of this Guaranty by any other person and further is not subject to any condition not expressly set forth in this Guaranty or any instrument executed in connection with the Debt. My obligation to pay according to the terms of this Guaranty shall not be affected by the illegality, invalidity or unenforceability of any notes or agreements evidencing the Debt, the violation of any applicable usury laws, forgery, or any other circumstances which make the indebtedness unenforceable against the Borrower. I will remain obligated to pay on this Guaranty even if any other person who is obligated to pay the Debt, including the Borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law.

**5. BANKRUPTCY.** If a bankruptcy petition should at any time be filed by or against the Borrower, the maturity of the Debt, so far as my liability is concerned, shall be accelerated and the Debt shall be immediately payable by me. I acknowledge and agree that this Guaranty, and the Debt secured hereby, will remain in full force and effect at all times, notwithstanding any action or undertakings by, or against, you or against any Property, in connection with any obligation in any proceeding in the United States Bankruptcy Courts. Such action or undertaking includes, without limitation, valuation of Property, election of remedies or imposition of secured or unsecured claim status upon claims by you, pursuant to the United States Bankruptcy Code, as amended. In the event that any payment of principal or interest received and paid by any other guarantor, borrower, surety, endorser or co-maker is deemed, by final order of a court of competent jurisdiction, to have been a voidable preference under the bankruptcy or insolvency laws of the United States or otherwise, then my obligation will remain as an obligation to you and will not be considered as having been extinguished.

**6. REVOCATION.** I agree that this is an absolute and unconditional Guaranty. I agree that this Guaranty will remain binding on me, whether or not there are any Debts outstanding, until you have actually received written notice of my revocation or written notice of my death or incompetence. Notice of revocation or notice of my death or incompetence will not affect my obligations under this Guaranty with respect to any Debts incurred by or for which you have made a commitment to Borrower before you actually receive such notice, and all renewals, extensions, refinancings, and modifications of such Debts. I agree that if any other person signing this Guaranty provides a notice of revocation to you, I will still be obligated under this Guaranty until I provide such a notice of revocation to you. If any other person signing this Guaranty dies or is declared incompetent, such fact will not affect my obligations under this Guaranty.

**7. PROPERTY.** I agree that any Property may be assigned, exchanged, released in whole or in part or substituted without notice to me and without defeating, discharging or diminishing my liability. My obligation is absolute and your failure to perfect any security interest or any act or omission by you which impairs the Property will not relieve me or my liability under this Guaranty. You are under no duty to preserve or protect any Property until you are in actual or constructive possession. For purposes of this paragraph, you will only be in "actual" possession when you have physical, immediate and exclusive control over the Property and have accepted such control in writing. Further, you will only be deemed to be in "constructive" possession when you have both the power and intent to exercise control over the Property.

**8. DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

A. Payments. I fail to make a payment in full when due.

B. Insolvency or Bankruptcy. The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me, Borrower, or any co-signer, endorser, surety or guarantor of this Guaranty or any Debt.

C. Business Termination. I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

D. Failure to Perform. I fail to perform any condition or to keep any promise or covenant of this Guaranty.

1776 TRANSPORTATION LLC
Oklahoma Guaranty
OK/4XKWEDMAN0000000000244B043N      Wolters Kluwer Financial Services 1996, 2021 Bankers Systems™      Page 1



001

E. Other Documents. A default occurs under the terms of any other document relating to the Debt.

F. Other Agreements. I am in default on any other debt or agreement I have with you.

G. Misrepresentation. I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. Judgment. I fail to satisfy or appeal any judgment against me.

I. Forfeiture. The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. Name Change. I change my name or assume an additional name without notifying you before making such a change.

K. Property Transfer. I transfer all or a substantial part of my money or property.

L. Property Value. You determine in good faith that the value of the Property has declined or is impaired.

M. Material Change. Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

N. Insecurity. You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Guaranty or that the prospect for payment or performance of the Debt is impaired for any reason.

9. WAIVERS AND CONSENT. To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. Additional Waivers. In addition, to the extent permitted by law, I consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to the Debt or this Guaranty.

(1) You may renew or extend payments on the Debt, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property.

(4) You, or any institution participating in the Debt, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of the Debt to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that the Borrower is authorized to modify the terms of the Debt or any instrument securing, guarantying or relating to the Debt.

(7) You may undertake a valuation of any Property in connection with any proceedings under the United States Bankruptcy Code concerning the Borrower or me, regardless of any such valuation, or actual amounts received by you arising from the sale of such Property.

(8) I agree to consent to any waiver granted the Borrower, and agree that any delay or lack of diligence in the enforcement of the Debt, or any failure to file a claim or otherwise protect any of the Debt, in no way affects or impairs my liability.

(9) I agree to waive reliance on any anti-deficiency statutes, through subrogation or otherwise, and such statutes in no way affect or impair my liability. In addition, until the obligations of the Borrower to Lender have been paid in full, I waive any right of subrogation, contribution, reimbursement, indemnification, exoneration, and any other right I may have to enforce any remedy which you now have or in the future may have against the Borrower or another guarantor or as to any Property.

Any Guarantor who is an "insider," as contemplated by the United States Bankruptcy Code, 11 U.S.C. 101, as amended, makes these waivers permanently. (An insider includes, among others, a director, officer, partner, or other person in control of the Borrower, a person or an entity that is a co-partner with the Borrower, an entity in which the Borrower is a general partner, director, officer or other person in control or a close relative of any of these other persons.) Any Guarantor who is not an insider makes these waivers until all Debt is fully repaid.

B. No Waiver By Lender. Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in the Debt instruments, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. Waiver of Claims. I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

10. REMEDIES. After the Borrower or I default, you may at your option do any one or more of the following.

A. Acceleration. You may make all or any part of the amount owing by the terms of this Guaranty immediately due.

B. Sources. You may use any and all remedies you have under state or federal law or in any documents relating to the Debt.

C. Insurance Benefits. You may make a claim for any and all insurance benefits or refunds that may be available on default.

D. Payments Made On My Behalf. Amounts advanced on my behalf will be immediately due and may be added to the Secured Debts.

E. Set-Off. You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Guaranty against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Guaranty" means the total amount to which you are entitled to demand payment under the terms of this Guaranty at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Debt, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

F. Waiver. Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

11. COLLECTION EXPENSES AND ATTORNEYS' FEES. On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Guaranty or any other document relating to the Debt. To the extent permitted by law, expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

12. WARRANTIES AND REPRESENTATIONS. I make to you the following warranties and representations which will continue as long as this Guaranty is in effect:

A. Power. I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.

B. Authority. The execution, delivery and performance of this Guaranty and the obligation evidenced by this Guaranty are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my Property is subject.

C. Name and Place of Business. Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.

In addition, I represent and warrant that this Guaranty was entered into at the request of the Borrower, and that I am satisfied regarding the Borrower's financial condition and existing indebtedness, authority to borrow and the use and intended use of all Debt proceeds. I further represent and warrant that I have not relied on any representations or omissions from you or any information provided by you respecting the Borrower, the Borrower's financial condition and existing indebtedness, the Borrower's authority to borrow or the Borrower's use and intended use of all Debt proceeds.

13. RELIANCE. I acknowledge that you are relying on this Guaranty in extending credit to the Borrower, and I have signed this Guaranty to induce you to extend such credit. I represent and warrant to you that I expect to derive substantial benefits from any loans and financial accommodations resulting in the creation of indebtedness guarantied hereby, and that this Guaranty is given for a business purpose.I agree to rely exclusively on the right to revoke this Guaranty prospectively as to future transactions in the manner as previously described in this Guaranty if at any time, in my opinion or the opinion of the directors or officers of my business, the benefits then being received by me in connection with this Guaranty are not sufficient to warrant the continuance of this Guaranty. You may rely conclusively on a continuing warranty that I continue to be benefited by this Guaranty and you will have no duty to inquire into or confirm the receipt of any such benefits, and this Guaranty will be effective and enforceable by you without regard to the receipt, nature or value of any such benefits.

14. APPLICABLE LAW. This Guaranty is governed by the laws of Oklahoma, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.

1776 TRANSPORTATION LLC
Oklahoma Guaranty
OK/4XXWEDMAN00000000002448043N

Wolters Kluwer Financial Services ©1996, 2021 Bankers Systems™

Page 2

002

15. AMENDMENT, INTEGRATION AND SEVERABILITY. This Guaranty may not be amended or modified by oral agreement. No amendment or modification of this Guaranty is effective unless made in writing. This Guaranty and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Guaranty is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.

16. ASSIGNMENT. If you assign any of the Debts, you may assign all or any part of this Guaranty without notice to me or my consent, and this Guaranty will inure to the benefit of your assignee to the extent of such assignment. You will continue to have the unimpaired right to enforce this Guaranty as to any of the Debts that are not assigned. This Guaranty shall inure to the benefit of and be enforceable by you and your successors and assigns and any other person to whom you may grant an interest in the Debts and shall be binding upon and enforceable against me and my personal representatives, successors, heirs and assigns.

17. INTERPRETATION. Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Guaranty.

18. NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS. Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Guarantor will be deemed to be notice to all Guarantors. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Guaranty and to confirm your lien status on any Property. Time is of the essence.

19. CREDIT INFORMATION. I agree that from time to time you may obtain credit information about me from others, including other lenders and credit reporting agencies, and report to others (such as a credit reporting agency) your credit experience with me. I agree that you will not be liable for any claim arising from the use of information provided to you by others or for providing such information to others.

20. ADDITIONAL TERMS. Guarantor(s) agrees to provide a financial statement annually or within 10 days of request by Bank

Guarantor(s) agrees to provide income tax return within 30 days of filing. If an extension is filed, Guarantor(s) agrees to provide copy of extension within 10 days of filing.

ADDITIONAL WAIVERS: In addition to all other waivers set forth herein, Guarantor expressly waives all rights, remedies, defenses and claims and/or rights of counterclaim, recoupment, offset or setoff, including, but not limited to, all offsets, setoffs, rights, remedies or defenses which may be afforded the Guarantor by any of Title 12, Okla. Stat. (2011), § 686 and/or Title 46, Okla. Stat. (2011), § 43 and/or Title 15, Okla. Stat. (2001), §§ 334, 337, 338 and 344, as any of such statutes may be amended from time to time.

DOCUMENT EFFECTIVE DATE: Notwithstanding the date upon which this document is signed by the undersigned, the effective date of this document shall be the date printed on the first page hereof; provided, however, that interest will not begin to accrue on the unpaid principal balance hereof until the date that funds are actually advanced by lender.

21. WAIVER OF JURY TRIAL. All of the parties to this Guaranty knowingly and intentionally, irrevocably and unconditionally, waive any and all right to a trial by jury in any litigation arising out of or concerning this Guaranty or any other documents relating to the Debt or related obligation. All of these parties acknowledge that this section has either been brought to the attention of each party's legal counsel or that each party had the opportunity to do so.

22. SIGNATURES. By signing, I agree to the terms contained in this Guaranty. I also acknowledge receipt of a copy of this Guaranty.

GUARANTOR:

1776 TRANSPORTATION LLC

By _____
CALEB JAMES PENCE, Member

Date 19 May 2021

By _____
CANDRA KIM PENCE, Member

Date 5/19/21

1776 TRANSPORTATION LLC
Oklahoma Guaranty
OK/4XKWIEDMAN00000000002446043N

Wolters Kluwer Financial Services ©1996, 2021 Bankers Systems™

Page 3

003

Case 25-20302    Doc# 15-4    Filed 03/31/25    Page 3 of 3



## BILL OF SALE AND ASSIGNMENT OF LOANS AND LOAN DOCUMENTS

FOR VALUE RECEIVED, **BANCCENTRAL, N.A.** ("Assignor") hereby grants, assigns, sets over and transfers to **SIM FUND II LLC**, a Colorado limited liability company ("Assignee"), whose address is c/o Summit Investment Management LLC, 1700 Lincoln Street, Suite 2150, Denver, CO 80203, all of Assignor's right, title, and interest under those certain Loans and Loan Documents as defined on Schedule A hereto.

THIS CONVEYANCE is made **WITHOUT RECOURSE, WARRANTY OR REPRESENTATION.**

IN WITNESS WHEREOF, the undersigned has executed, signed and sealed this Bill of Sale and Assignment of Loans and Loan Documents as of August 27, 2024.

BancCentral, N.A.

By: _Diana S Karbs_

Name: _Diana S Karbs_

Title: _VP_

STATE OF             )

                            )

COUNTY OF          )

I, the undersigned, a Notary Public in and for the State and County aforesaid, do hereby certify that _Diana S Karbs_, as _Vice President_ of BancCentral, N.A., whose name is signed to the foregoing Bill of Sale and Assignment of Loans and Loan Documents, appeared before me this _28th_ day of _August_, 2024, and acknowledged that the foregoing is the true act and deed on behalf of the bank.

_Mona Jankey_

Notary Public

My Commission expires: _7-29-2027_

[Notarial Seal]

NOTARY PUBLIC, State of Oklahoma
Commission #15006968
Garfield County
MONA JANKEY
My Commission Expires 7-29-2027

001

## SCHEDULE A
### to Bill of Sale and Assignment of Loans and Loan Documents

Promissory Note dated May 19, 2019, in the original principal amount of $308,000.00 by Caleb James Pence and Candra Kim Pence in favor of BancCentral, N.A.

Commercial Loan Agreement dated May 19, 2021, by Caleb James Pence and Candra Kim Pence, in favor of BancCentral, N.A.

Guaranty dated May 19, 2021, by 1776 Transportation LLC in favor of BancCentral, N.A.

Mortgage dated August 25, 2017, by Caleb James Pence and Candra Kim Pence, in favor of BancCentral, N.A. recorded in the County Clerk's Office of Grant County, Oklahoma at Book 0741 Pg 4 as Instrument No. 2017-001728.

Mortgage dated May 19, 2021, by Caleb James Pence and Candra Kim Pence, in favor of BancCentral, National Association recorded in the County Clerk's Office of Grant County, Oklahoma at Book 0768 Pg 730 as Instrument No. 2021-000668.

Mortgage dated May 19, 2021, by Caleb James Pence and Candra Kim Pence, in favor of BancCentral, National Association recorded in the County Clerk's Office of Grant County, Oklahoma at Book 0768 Pg 723 as Instrument No. 2021-000667.

First American Title Insurance Company Loan Policy of Title Insurance Policy No. 5011300-2525874e.

002



I-2024-001195
09/17/2024 10:02am    Book 0792 Pg 419
Fee: $20.00    Pg 0419-0420
Cindy Pratt - Grant    Doc: $0.00
County Clerk
State of OK



**EXHIBIT**

**F**

REF292316702A

Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315-3008

## ASSIGNMENT OF REAL ESTATE MORTGAGE

| **ASSIGNOR** | **ASSIGNEE** |
|---|---|
| BANCCENTRAL NATIONAL ASSOCIATION | SIM FUND II, LLC |
| 604 FLYNN ST, | 1700 LINCOLN ST, SUITE 2150 |
| ALVA, OK 73717 | DENVER, CO 80203 |

FOR VALUE RECEIVED the above-named Assignor ("Assignor") grants, assigns, transfers and sets over, without recourse or warranty of title, to SIM FUND II, LLC, the above-named Assignee, ("Assignee" which term shall be construed to include Assignee's successors and assignees), all of Assignor's rights, title and interest in that certain real estate mortgage executed by CALEB JAMES PENCE AND CANDRA KIM PENCE, husband and wife to BANCCENTRAL NATIONAL ASSOCIATION, (the "Mortgage") described as follows:

| County/State | Dated | Document No. | Book | Page |
|---|---|---|---|---|
| Grant, Oklahoma | May 19, 2021 | I-2021-000667 | 768 | 723 |

together with the notes, debts, and claims secured by the Mortgage, covering the following described real estate:

LOT 5 BLOCK 2 SOUTH ADDITION MANCHESTER, OKLAHOMA (50'X140') (WITH ALL IMPROVEMENTS AND MINERALS). SOUTH 25 FEET OF LOT 4 BLOCK 2 SOUTH ADDITION MANCHESTER OKLAHOMA. (25'X140') (WITH ALL IMPROVEMENTS AND MINERALS)
AND
LOTS 6,7,&8 IN BLOCK 2 SOUTH ADDITION MANCHESTER, GRANT CO. STATE OF OKLAHOMA. TOGETHER WITH AMERICAN EAGLE DOUBLE WIDE TRAILER: 6026-3RFBF2, VIN# GF08-0244, IS DECLARED BY COURT TO BE PERMANENTLY PART OF THE PROPERTY. WITH ALL IMPROVEMENTS AND ALL MINERAL RIGHTS.

### AKA: 815 5TH ST, MANCHESTER, OKLAHOMA 73758

TO HAVE AND TO HOLD the Mortgage to the Assignee and Assignee's successors and assigns forever.

Signed and delivered on this 28th day of August, 2024.

BANCCENTRAL NATIONAL ASSOCIATION

By: _Diana S. Karbs_

Diana S. Karbs, Vice President

001

I-2024-001195     Book 0792 Pg 420
09/17/2024 10:02am     Pg 0419-0420
Fee: $20.00   Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

STATE OF OKLAHOMA

                SS.

COUNTY OF GARFIED

The foregoing instrument was acknowledged before me on this 28th day of August, 2024 by Diana S. Karbs, as Vice President of Banccentral National Association.

My Commission expires: 7-29-2027     _Mona Ganbey_

                                        Notary Public

NOTARY PUBLIC, State of Oklahoma
Commission #15006968
Garfield County
MONA JANKEY
My Commission Expires   7-29-2027

002





I-2024-001194   Book 0792 Pg 417
09/17/2024 9:51am      Pg 0417-0418
Fee: $20.00  Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK


REF292316849A

Return to:
Document Recording Services
— P.O. Box 3008
Tallahassee, FL 32315-3008

## ASSIGNMENT OF REAL ESTATE MORTGAGE

**ASSIGNOR**
BANCCENTRAL NATIONAL ASSOCIATION
604 FLYNN ST,
ALVA, OK 73717

**ASSIGNEE**
SIM FUND II, LLC
1700 LINCOLN ST, SUITE 2150
DENVER, CO  80203

FOR VALUE RECEIVED the above-named Assignor ("Assignor") grants, assigns, transfers and sets over, without recourse or warranty of title, to SIM FUND II, LLC, the above-named Assignee, ("Assignee" which term shall be construed to include Assignee's successors and assignees), all of Assignor's rights, title and interest in that certain real estate mortgage executed by CALEB JAMES PENCE AND CANDRA KIM PENCE, husband and wife to BANCCENTRAL NATIONAL ASSOCIATION, (the "Mortgage") described as follows:

| County/State | Dated | Document No. | Book | Page |
|---|---|---|---|---|
| Grant, Oklahoma | May 19, 2021 | I-2021-000668 | 768 | 730 |

together with the notes, debts, and claims secured by the Mortgage, covering the following described real estate:

THE EAST TWENTY FEET (E.20') OF THE SOUTH THIRTY-FIVE FEET (S.35') OF LOTS TWO (2) AND THE EAST TWENTY FEET (E.20') OF LOT THREE (3) AND ALL OF LOTS FOUR (4), FIVE (5) AND SIX (6), IN BLOCK ONE (1), SOUTH ADDITION TO THE TOWN OF MANCHESTER, GRANT COUNTY, OKLAHOMA,

TRACT 2:
A TRACT OF LAND BEING A PART OF THE WEST-HALF OF THE SOUTHWEST QUARTER OF SECTION FOURTEEN (14), TOWNSHIP TWENTY-NINE NORTH, (29N), RANGE EIGHT (8), W.I.M., GRANT COUNTY, OKLAHOMA, BOUNDED AS FOLLOWS: BEGINNING AT THE NORTHEAST CORNER OF THE TRACT OF LAND, HERETOFORE PLATTED AS THE SOUTH ADDITION TO THE TOWN OF MANCHESTER, OKLAHOMA; THENCE SOUTH ALONG THE EAST LINE OF SAID ADDITION 1400 FEET TO THE SOUTHEAST CORNER THEREOF; THENCE EAST 228 FEET TO THE DIVIDING LINE BETWEEN THE EAST-HALF AND THE WEST-HALF OF SAID QUARTER SECTION; THENCE NORTH ALONG SAID DIVIDING LINE TO THE NORTH LINE OF SAID QUARTER SECTION; THENCE WEST ALONG NORTH LINE OF SAID QUARTER SECTION 216 FEET TO THE PLACE OF BEGINNING, LESS AND EXCEPT THE RIGHT OF WAY OF THE SANTA FE RAILWAY ACROSS SAID LAND, LESS AND EXCEPT THE NORTH 150 FEET AND THE SOUTH 1100 FEET OF SAID TRACT OF LAND AS

001



I-2024-001194     Book 0792 Pg 418
09/17/2024 9:51am     Pg 0417-0418
Fee: $20.00   Doc: $0.00
Cindy Pratt - Grant County Clerk
State of OK

DETERMINED BY THE WEST LINE OF SAID TRACT OF LAND,

TRACT 3:
THE NORTH 150' OF A TRACT OF LAND, BEING A PART OF THE W/2 OF THE SW/4 OF SECTION FOURTEEN (14), TOWNSHIP TWENTY-NINE NORTH (29N), RANGE EIGHT (8), W.I.M., GRANT, COUNTY, OKLAHOMA, BOUNDED AS FOLLOWS: BEGINNING AT THE NORTHEST CORNER OF THE TRACT OF LAND HERTOFORE PLATTED AS THE SOUTH ADDITION TO THE TOWN OF MANCHESTER, OKLAHOMA, THENCE SOUTH ALONG THE EAST LINE OF SAID ADDITION 1400 FEET TO THE SOUTHEAST CORNER THEREOF, THENCE EAST 228 FEET TO THE DIVIDING LINE BETWEEN THE EAST-HALF AND THE WEST-HALF OF SAID QUARTER SECTION, THENCE NORTH ALONG SAID DIVIDING LINE TO THE NORTH LINE OF SAID QUARTER SECTION, THENCE WEST ALONG THE NORTH LINE OF SAID QUARTER SECTION 216 FEET TO THE PLACE OF BEGINNING, LESS AND EXCEPT THE RIGHT OF WAY OF THE SANTA FE RAILWAY ACROSS SAID LAND.

TRACT 4:
A TRACT OF PARCEL OF LAND LYING IN THE SOUTHWEST QUARTER (SW/4) OF SECTION FOURTEEN (14), TOWNSHIP TWENTY-NINE (29N), RANGE EIGHT (8), W.I.M., GRANT COUNTY, OKLAHOMA, MORE PARTICULARLY DESCRIBED AS FOLLOWS: A PARCEL OF LAND 100 FEET WIDE THROUGH THE SAID SW/4 OF S14-T29N-R8W, SAID PARCEL BEING FIFTY FEET (50') ON EITHER SIDE OF THE FORMER RIGHT OF WAY OF THE GULF RAILROAD COMPANY, OVER AND ACROSS THE AFORMENTIONED SW/4, WITH SAID PARCEL CONTAINING 5.97 ACRES, MORE OR LESS.

### AKA: 846 5TH ST, MANCHESTER, OKLAHOMA 73758

TO HAVE AND TO HOLD the Mortgage to the Assignee and Assignee's successors and assigns forever.

Signed and delivered on this 28th day of August, 2024.

BANCCENTRAL NATIONAL ASSOCIATION

By: *Diana S. Karbs*

Diana S. Karbs, Vice President

STATE OF OKLAHOMA

            SS.

COUNTY OF GARFIED

The foregoing instrument was acknowledged before me on this 28th day of August, 2024 by Diana S. Karbs, as Vice President of Banccentral National Association.

My Commission expires: 7-29-27       *Mona Jankey*

                                       Notary Public

> NOTARY PUBLIC, State of Oklahoma
> Commission #15006968
> Garfield County
> MONA JANKEY
> My Commission Expires   7-39-2027

002



EXHIBIT

H

## IN THE DISTRICT COURT OF GRANT COUNTY
## STATE OF OKLAHOMA

GRANT COUNTY
**FILED**

JAN 0 9 2025

ADRIENNE HEMBREE
COURT CLERK
By _____

SIM FUND II LLC, a Colorado limited liability company, )
                                                        )

                  Plaintiff,                       )

                                                   )

vs.                                                    )    Case No. CJ-2024-3

                                                   )

CALEB JAMES PENCE;                          )

CANDRA KIM PENCE;                         )

1776 TRANSPORTATION LLC, an Oklahoma   )

      limited liability company;               )

PENNY HUFF, COUNTY TREASURER,       )

      GRANT COUNTY, OKLAHOMA; and    )

BOARD OF COUNTY COMMISSIONERS, GRANT )

      COUNTY, OKLAHOMA,               )

                                                   )

                  Defendants.                )

## AGREED TO
## JOURNAL ENTRY OF JUDGMENT

NOW, on this 9 day of January_____, 2025, this matter comes on for hearing before the above-captioned Court upon the agreement of the parties. The Plaintiff, SIM Fund II LLC, a Colorado limited liability company (hereinafter referred to as the "Plaintiff"), appears by and through its attorney of record, Vance T. Nye of Gungoll, Jackson, Box & Devoll, P.C., of Enid and Oklahoma City, Oklahoma. The Defendants, Caleb James Pence (hereinafter referred to as "Caleb Pence"), Candra Kim Pence (hereinafter referred to as "Candra Pence"), and 1776 Transportation LLC, an Oklahoma limited liability company (hereinafter referred to as "1776"), appear by and through their attorneys of record, Stephen Jones and William Jewell, of Jones, Otjen, and Jewell, of Enid, Oklahoma. The Defendants, Penny Huff, County Treasurer, Grant County, Oklahoma and Board of County Commissioners, Grant County, Oklahoma (hereinafter referred to, collectively, as the "County") appear by and through their attorney of record, Benjamin C. Bowers, Assistant District Attorney, Medford, Oklahoma.

001

The Court, having reviewed the pleadings and process on file herein including, but not limited to, the Motion and heard arguments from counsel, finds as follows:

1. The Defendants, Caleb Pence, Candra Pence, 1776, and the County have all been properly served in this matter with the Plaintiff's Petition and Summons as well as Plaintiff's Motion for Summary Judgment and that said service is regular and proper in all respects.

2. The Defendants, Caleb Pence, Candra Pence, 1776, and the County have all entered their appearance in this matter by and through counsel of record.

3. The Defendants, Caleb Pence, Candra Pence, and 1776, previously filed herein an Application to Stay Proceedings, Supplement to Application to Stay Proceedings, and Second Supplement to Application to Stay Proceedings (hereinafter referred to, collectively, as the "Application to Stay") which have all been objected to by the Plaintiff.

4. The Plaintiff and the Defendants, Caleb Pence, Candra Pence, and 1776, have reached an agreement to resolve this matter under the terms and provisions set forth herein.

5. By their agreement to this judgment, the Defendants, Caleb Pence, Candra Pence, and 1776, have and do specifically withdraw their Application to Stay previously filed herein and specifically consent to the entry of this judgment.

6. The Defendant, the County, is also agreeable to resolving this matter under the terms and provisions set forth herein.

7. The terms and provisions of the agreement of the Parties, as set forth herein, is fair and reasonable and should be reduced to judgment by this Court.

8. The Plaintiff is entitled to judgment, as set forth herein, including, but not limited to, a foreclosure of its mortgages sued upon in this cause, as against all of the Defendants, and each of them, subject to the lien priorities set forth herein.

9. The mortgages owned, held, and sued upon by the Plaintiff herein expressly waives appraisement or not at the option of the owner and holder thereof, such option to be

2

002

exercised at the time judgment is rendered herein, and the Plaintiff elects to have said property sold with appraisement.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the Application to Stay previously filed herein by the Defendants, Caleb Pence, Candra Pence, and 1776, is hereby withdrawn by said Defendants as evidenced by the signature of their counsel below.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Plaintiff is entitled to and is hereby granted judgment, *in personam*, on its Motion for Summary Judgment against the Defendants, Caleb Pence, Candra Pence, AND 1776, jointly and severally, in the sum of $245,695.32 as of January 7, 2025; plus $21,009.79 in interest as of January 7, 2025; plus interest continuing to accrue from and after January 7, 2025, at the contract rate as set forth in the note sued upon herein until the date of judgment; plus all other charges due and proper under the note sued upon herein and all loan documents associated therewith including, but not limited to, any and all advances for taxes, insurance (being $750.75 as of January 7, 2025), and property preservation expenses during the pendency of this action; plus attorney fees of $11,715.00 as of January 7, 2025; plus all additional attorney fees incurred by the Plaintiff in connection with collection of this judgment; plus costs of $306.89 as of January 7, 2025; plus all additional costs incurred by the Plaintiff in connection with collection of this judgment; all of said sums bearing interest from and after the date of judgment at the rate as set forth in the note sued upon herein or the statutory rate, whichever is greater.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED BY THE COURT that the judgment in the amounts set forth in the immediately preceding paragraph are secured by Plaintiff's mortgages sued upon herein which constitute a first, prior and superior liens upon the real estate and premises located in Grant County, Oklahoma, described as follows:

Tract 1:

The North 11 feet of the South 25 feet of Lot 4 Block 2 South Addition Manchester, Oklahoma (with all improvements and minerals)

Tract 2:

3

003

The South 39 feet of Lot 6 and all of Lots 7 & 8 in Block 2 South Addition Manchester, Grant Co. State of Oklahoma, together with American Eagle Double Wide Trailer: 6026-3RFBF2, VIN #GF08-0244, is declared by Court to be permanently part of the property, with all improvements and all mineral rights.

Tract 3:

The East Twenty Feet (E.20') of the South Thirty-Five Feet (S.35') of Lots Two (2) and the East Twenty Feet (E.20') of Lot Three (3) and all of Lots Four (4), Five (5) and Six (6), in Block One (1), South Addition to the Town of Manchester, Grant County, Oklahoma,

Tract 4:

A tract of land being a part of the West-Half of the Southwest Quarter of Section Fourteen (14), Township Twenty-Nine North, (29N), Range Eight (8), W.I.M., Grant County, Oklahoma, bounded as follows: Beginning at the Northeast Corner of the tract of land, heretofore platted as the South Addition to the Town of Manchester, Oklahoma; Thence South along the East line of said Addition 1400 Feet to the Southeast Corner thereof; Thence East 228 Feet to the dividing line between the East-Half and the West-Half of said Quarter Section; Thence North along said dividing line to the North line of said Quarter Section; Thence West along North lien of said Quarter Section 216 Feet to the place of beginning, LESS AND EXCEPT the right of way of the Santa Fe Railway across said land, LESS AND EXCEPT the North 150 Feet and the South 1100 Feet of said tract of land as determined by the West line of said tract of land,

Tract 5:

The North 150' of a tract of land, being part of the W/2 of the SW/4 of Section Fourteen (14), Township Twenty-Nine North (29N), Range Eight (8), W.I.M., Grant County, Oklahoma, bounded as follows: Beginning at the Northeast Corner of the tract of land heretofore platted as the South Addition to the Town of Manchester, Oklahoma, thence South along the East line of said Addition 1400 Feet to the Southeast Corner thereof, thence East 228 Feet to the dividing line between the East-Half and the West-Half of said Quarter Section, thence North along said dividing line to the North line of said Quarter Section, thence West along the North line of said Quarter Section 216 Feet to the place of beginning, LESS AND EXCEPT the right of way of the Santa Fe Railway across said land.

Tract 6:

A trace of parcel of land lying in the Southwest Quarter (SW/4) of Section Fourteen (14), Township Twenty-Nine (29N), Range Eight (8), W.I.M., Grant County, Oklahoma, more particularly described as follows: A parcel of land 100 Feet wide through the said SW/4

4

004

of S14-T29N-R8W, said parcel being Fifty Feet (50') on either side of the former right of way of the Gulf Railroad Company, over and across the aforementioned SW/4, with said parcel containing 5.97 acres, more or less.

and that any and all right, title or interest which any of the Defendants have, or claim to have, in or to said real estate and premises is subsequent, junior, and inferior to the mortgages and liens of the Plaintiff subject only to the lien priorities set forth below.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the mortgages and liens of the Plaintiff in the amounts hereinabove found and adjudged be foreclosed, and a special execution and order of sale issue out of the office of the District Court Clerk in this cause, directed to the Sheriff to levy upon, advertise and sell, after due and legal appraisement, the real estate and premises hereinabove described, subject to unpaid taxes, advancements by Plaintiff for taxes, insurance premiums or expenses necessary for the preservation of the subject property, if any, and pay the proceeds of said sale to the Clerk of this Court, as provided by law, for application as follows:

FIRST: To the payment of costs herein accrued and accruing;

SECOND: To the payment of any unpaid real property taxes that may be due and owing to the County at the time of sale of any of the real property shown above.

THIRD: To the payment of the judgment and first liens of the Plaintiff in the amounts herein set out;

The balance, if any, to be paid to the Clerk of this Court to await further order of this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that upon confirmation of said sale, the Defendants herein, and each of them, and all persons claiming by, through or under them since the commencement of this action, be forever barred, foreclosed, and enjoined from asserting or claiming any right, title, interest, estate, or equity of redemption in or

5

005

to said real estate and premises, or any part thereof

_____

Honorable Jeff Crites, Associate District Judge

APPROVED AS TO FORM:

Vance T. Nye, OBA #15822
GUNGOLL, JACKSON, BOX & DEVOLL, P.C.
4747 Gaillardia Parkway, Suite 100
Oklahoma City, Oklahoma 73142
Telephone:      (405) 272-4710
Facsimile:      (405) 272-5141
nye@gungolljackson.com
Attorneys for Plaintiff

_____

Stephen Jones, OBA #4805
William Jewell, OBA #34376
JONES, OTJEN & JEWELL
214-A N. Independence St
P.O. Box 472
Enid, Oklahoma 73702
Oklahoma City, Oklahoma 73102
Telephone:      (580) 242-5500
Facsimile:      (580) 242-4556
sjones@stephenjoneslaw.com
wjewell@stephenjoneslaw.com
Attorneys for Defendants, Caleb Pence, Candra Pence, and 1776

6

006

Benjamin C. Bowers, OBA # 31486
Assistant District Attorney
112 W. Guthrie St. #303
Medford, Oklahoma 73759
Telephone:     (580) 395-2156
Facsimile:     (580) 242-4556
Attorney for Defendant, County

7

007